**SOUTHERN COUNTY MUTUAL INSURANCE CO., Appellant,**

v.

**Joanne L. DAVIS, Appellee.**

**No. 832.**

Court of Civil Appeals of Texas, Corpus Christi.

March 28, 1974.

B. Mills Latham, Dyer, Redford, Burnett, Wray & Woolsey, Corpus Christi, for appellant.

Lola L. Bonner, Rockport, for appellee.

## OPINION

BISSETT, Justice.

This is a suit on a fire insurance policy. Joanne L. Davis sued Southern County Mutual Insurance Company to recover the full amount of a fire insurance policy issued by it on a mobile home which was totally destroyed by fire on August 8, 1969. Following a trial before the court, judgment was rendered in favor of plaintiff. Southern County Mutual Insurance Company, defendant-appellant, has appealed. We affirm.

The policy sued on, which became effective on July 21, 1969 and was in force on the date of destruction of the mobile home, contained the following exclusion said by the defendant to be applicable:

"This policy does not apply:

. . . (b) under any of the coverages, if the mobile home is or at any time be-comes subject to any bailment lease, conditional sale, purchase agreement, mortgage or other encumbrance not specifically declared and described in this policy; . . ."

The policy was issued to Charles T. Davis, who, with his wife, Joanne L. Davis, plaintiff herein, were the owners of the mobile home. Charles T. Davis died on November 14, 1969, and plaintiff succeeded to his rights and interest in both the mobile home and in the said policy of insurance. The mobile home was rented to a Mrs. Peterson at the time of the fire, who was living in it when it burned. Defendant contends that the renting of the mobile home constituted a violation of the above quoted policy provision which excludes coverage of property subject to a "bailment lease".

Findings of fact and conclusions of law were filed. In addition to other findings that are not challenged in this appeal, the trial court found that the renting of the mobile home was not for a definite term. The court concluded that there was no "bailment lease".

Defendant asserts two points of error. It contends, in Point No. One, that the trial court erred because the court's finding that the mobile home was not subject to a bailment lease at the time of the loss is not supported by the evidence since the evidence conclusively established that the mobile home was subject to a bailment lease at the time of loss. Point No. Two submits that the trial court erred in finding that the rental agreement covering the mobile home was not for a definite term since the evidence shows conclusively that the rental agreement was for a definite term. Defendant prays that this Court reverse the judgment of the trial court and render judgment that plaintiff take nothing by her suit.

We consider both of defendant's points of error to be "no evidence" points. In passing on such points, we follow the well established rule which permits us to consider only that evidence, if any, which,

viewed in its most favorable light, supports the findings made by the trier of facts, and requires us to disregard all evidence which would lead to a contrary result. Biggers v. Continental Bus System, 157 Tex. 351, 303 S.W.2d 359 (1957).

■ The term "bailment lease" had its genesis in Pennsylvania as a means of circumventing the Uniform Conditional Sales Act, as there enacted, by allowing the vendor of property to retain legal title thereto as security for the unpaid purchase price of a chattel. See American Fire & Casualty Co. v. Scott, 228 S.W.2d 324 (Tex.Civ. App., Austin 1950, n. w. h.). The term was not defined in the policy that was issued by defendant. Apparently no appellate court in this State has defined the term, although it was defined by the trial court in its charge to the jury in the case of Smith v. American Fire & Casualty Co., 242 S.W.2d 448 (Tex.Civ.App., Beaumont 1951, n. w. h.), as "the letting by the owner of a chattel to another at an agreed rental for a definite term". That definition was neither approved nor disapproved by the Court of Civil Appeals. Justice Walker, in writing for the Court, carefully noted that "since no objection to these definitions is made by the defendant these definitions fix the meaning of the terms defined and must be used in determining whether the exclusion provision ever came into operation". That situation does not exist in this case.

When the specific exclusion of the policy sued on is considered, it can only refer to instances where the insured property becomes subject to a security interest, as opposed to instances where the insured transfers a mere possessory interest. Any other construction would not be consistent with the context of the exclusion itself. American Fire & Casualty Co. v. Scott, supra. Our examination of the policy as a whole does not disclose any exclusion that prohibits the occupancy by a tenant of the mobile home. The subject exclusion is directed solely to a security transaction and not to a simple landlord-tenant relationship.

■ A "bailment lease" as that term is used in the policy is a legal method by which one desiring to purchase an article of personal property, but unable to pay for it at the time, may secure possession of it, with the right to use and enjoy it as long as he pays the stipulated "rental", and the further right to become the absolute owner, on completing the installment payments called for in the lease, by the then payment of an additional sum which may be nominal in amount. See Valicenti v. Central Motors, Inc., 115 Pa.Super. 74, 174 A. 799 (1934); In re Robinson, 40 F.Supp. 320 (D.C.Pa. 1941), affirmed 3 Cir., 122 F.2d 336; Motors Insurance Corporation v. Stanley, 237 Miss. 681, 115 So.2d 678 (1959); Heinen v. Home Mutual Casualty Co., 5 Wis.2d 282, 92 N.W.2d 836 (1958); Great American Indemnity Company v. Ashbaugh, 96 Ga.App. 166, 99 S.E.2d 501 (1957); 8 C.J.S. Bailments § 3(6), pp. 342–345; 8 Am.Jur.2d, Bailments, § 28, p. 934.

The ultimate right to become the absolute owner of the personal property is an essential ingredient to a bailment lease. Motors Ins. Corp. v. Stanley, supra. Here, when the whole tenor of the oral agreement between the insured and the tenant is taken into account, it is clear that Mrs. Peterson had no right to become the absolute owner of plaintiff's mobile home.

■ The only evidence relating to the agreement pertaining to the renting of the mobile home is found in plaintiff's testimony. The tenant, Mrs. Peterson, did not testify. The agreement was verbal. The exact date thereof is not shown by the record. The rental was $55.00 per month. A month's rental was paid in advance when possession of the mobile home was delivered to Mrs. Peterson sometime in July, 1969. Plaintiff did not recall whether the rental after the first month was paid in one payment or in two payments. According to the evidence, which, when viewed in its most favorable light supports the findings made by the trial court, Mrs. Peterson was desperate for a place to live and rented the mo-

bile home temporarily until she could find an apartment. Plaintiff testified that she had the right to ask that Mrs. Peterson move out of the mobile home, should she (plaintiff) so desire, and that Mrs. Peterson "was free to move at any time she wanted to". The tenant was not authorized to remove the mobile home from the park where it was located, nor was she authorized to make any alterations or do anything to it. There was nothing in the agreement that gave the tenant the right to use and enjoy the mobile home as long as she paid the rental, or the right to ever become the owner of the mobile home. There is ample evidence to sustain the finding that the renting of the mobile home was not for a definite term.

We agree with defendant that the terms "bailment" and "lease" each have specific legal meanings; however, the term "bailment lease" also has a specific legal meaning, and we hold that the verbal agreement in question in this case did not create a "bailment lease" as we have defined that term. Both of defendant's points of error are overruled.

The judgment of the trial court is affirmed.