69952. HALL et al. v. GARDENS SERVICES, INC.
(332 SE2d 3)

BIRDSONG, Presiding Judge.

Plaintiffs Joyce and Hulan Hall were vacationing at Callaway Gardens. Joyce decided to go horseback riding. Arrangements were made through the hotel. Joyce asked whether the horses "walked" or "ran" and was assured they "walked" and "it was safe for children over three years of age."

Joyce and her five-year-old daughter went to the location designated, and she was asked to sign a "Release of Liability." There was only one sheet for all riders to sign. It stated, in part: "I (we), the undersigned, am hiring your horse (horses) to ride today and all future rides at my own risk, which I voluntarily assume. In consideration of the modest fee charged and paid by me, I (we), the undersigned, hereby release Gardens Services, Inc., and its employees and agree to hold it and them harmless from any and all liability, claims, damages, actions and causes of action whatsoever, for loss, damage, or

injury to person . . . irrespective of how arising, and however caused including but not limited to all kinds and degrees or extent of negligency [sic] (except willful or wanton negligence or misconduct), which GARDENS SERVICES, INC. may commit or be charged with . . . in connection, directly or indirectly, with the riding . . . or using of your horse (horses). . . ." All riders were told they could not ride if they did not sign. Joyce said she "briefly read it, but they were rushing you to get on the horses." Joyce asked one of the guides if the horses "walked" and was again told that they "walked." Joyce and her daughter rode on the same horse.

After the ride began, their horse "kept going off the trail into the woods" and she asked the guide why it did this, and was told "it didn't want to get its feet muddy." There were muddy places on the trail. They had been on the trail for about 35 minutes when her horse left the trail and started running through the woods. She pulled back on the reins but the horse would not stop. Joyce and her daughter fell from the horse when struck by tree branches. They fell on the steep side of a slope and Joyce slid back down to the trail. She alleges she was injured as a result of the fall and brought this action for damages. Her husband joined in the suit with a claim for medical expenses and loss of consortium. The trial court granted defendant's motion for summary judgment, and plaintiffs bring this appeal. *Held*:

This is a contract of bailment for hire. Generally, except for statutes and public policy, the bailment contract governs the rights, duties, and liabilities of a bailor and bailee as between themselves. *Hall v. Skate Escape, Ltd.*, 171 Ga. App. 178 (319 SE2d 67). It is general contract law in Georgia that parties are free to contract about any subject matter, on any terms, unless prohibited by statute or public policy, and injury to the public interest clearly appears. *Cash v. Street & Trail*, 136 Ga. App. 462, 465 (221 SE2d 640). A contract cannot be said to be contrary to public policy unless the General Assembly has declared it to be so, or unless the consideration of the contract is entered into for the purpose of effecting an illegal or immoral agreement or doing something which is in violation of law. *Camp v. Aetna Ins. Co.*, 170 Ga. 46, 50 (152 SE 41); *Brown v. Five Points Parking Center*, 121 Ga. App. 819, 821 (175 SE2d 901).

Exculpatory clauses in contracts in Georgia are valid and binding and not void as against public policy where the bailor relieves himself from his own negligence, except for that negligence which amounts to wilful and wanton misconduct. *Redfern Meats v. Hertz Corp.*, 134 Ga. App. 381, 384 (215 SE2d 10); *Hitchcock v. Mayfield*, 133 Ga. App. 546, 547 (211 SE2d 612); *Seaboard Coast Line R. Co. v. Freight Delivery Svc.*, 133 Ga. App. 92, 93 (210 SE2d 42). We have found no statute prohibiting this type of contract. This was not an illegal or immoral agreement or in contravention of law.

" 'It is well settled that contracts will not be avoided by the courts as against public policy, except "where the case is free from doubt and where an injury to the public interest clearly appears." ' In examining this case we also follow the rule that the courts must exercise extreme caution in declaring a contract void as against public policy and should do so 'only in cases free from doubt.' " *Emory Univ. v. Porubiansky*, 248 Ga. 391, 393 (282 SE2d 903).

In Georgia, we have legislation which requires the bailor to warrant the article bailed is free from any secret fault rendering it unfit for the purposes for which it is hired. OCGA § 44-12-63. However, this court held, in *Redfern Meats*, supra, that this liability of a lessor is exculpated by such a clause, "even when the damage is caused by the lessor's own negligence, as long as the exculpatory clause is not contrary to public policy and explicitly shows an intent to include the lessor's own negligence, and that negligence does not amount to wilful and wanton misconduct." Id. p. 384.

We have found that a clause such as the one in this case is not contrary to public policy, where it explicitly included the bailor's own negligence and no wilful or wanton misconduct appears from the record before us. Further, "a person may waive or renounce what the law has established in his favor when he does not thereby injure others or affect the public interest." OCGA § 1-3-7. The bailee in the instant case renounced the warranty of suitability which the law had established in her favor.

The trial court did not err in finding a valid release or waiver by Joyce Hall and granting summary judgment for Gardens Services. Since the right of the husband to recover for consortium is dependent upon the right of the wife to recover, and since on the record before us she cannot recover, he likewise cannot recover. *Stone Mountain Memorial Assn. v. Herrington*, 225 Ga. 746 (3) (171 SE2d 521); *Norris v. Atlanta &c. R. Co.*, 174 Ga. App. 389 (330 SE2d 151).

*Judgment affirmed. Carley and Sognier, JJ., concur.*

DECIDED APRIL 30, 1985 —
REHEARING DENIED MAY 24, 1985.

*Lawrence D. Kupferman*, for appellants.
*J. Ronald Mullins, Jr.*, for appellee.